IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

JULIO CESAR CHAMERRY RIZO,

    Defendant.

No. C 13-00240 SI

**ORDER DENYING MOTION TO SUPPRESS**

On November 8, 2013, the Court heard argument on a motion to suppress evidence brought by defendant Julio Cesar Chamerry Rizo. The defendant seeks to suppress all evidence seized during the February 7, 2013 search of his residence. Having considered the arguments of counsel and the papers submitted, the Court DENIES the defendant's motion.

## BACKGROUND

On April 11, 2013, the defendant, Julio Cesar Chamerry Rizo, was charged in a single-count indictment, with related forfeiture allegations, with the knowing possession of forged or counterfeited alien registration cards and other documents, in violation of 18 United States Code § 1546(a). Indictment. The defendant was arrested, and subsequently indicted, following an investigation by Homeland Security Investigations ("HSI")[1] into fraudulent document sales allegedly taking place in

---

[1] HSI is a division of US Immigration and Customs Enforcement. "HSI conducts criminal investigations against terrorist and other criminal organizations who threaten national security. HSI combats worldwide criminal enterprises who seek to exploit America's legitimate trade, travel and

Oakland, California. United States' Opposition to Defendant's Motion to Suppress ("Gov. Opp'n") at 2.

Beginning in February, 2012, HSI conducted an investigation, focusing on an individual known as El Gallo, who was believed to be a seller of fraudulent identity documents. Defendant's Motion to Traverse Search Warrant and Suppress Evidence ("Def.'s Mot.") Ex. A at ¶¶ 23-25. The investigation revealed the existence of a fraudulent document organization involving multiple individuals. *Id.* at ¶ 25. HSI engaged in a number of interactions with the alleged organization, including "buy-walk" operations for purchasing fraudulent identity documents, recorded phone calls with the assistance of confidential informants, and general surveillance of the individuals HSI believed to be involved in the organization. *Id.* at ¶¶ 26-62. On November 20, 2012, while conducting surveillance of El Gallo himself, HSI agents observed him driving to the 2800 block of Westmoreland Avenue in Redwood City, California and parking on the east side of the street, in the middle of the block. *Id.* at ¶¶ 42-46.

On November 27, 2012, HSI agents surveilled the 2800 block of Westmoreland Avenue in an attempt to ascertain the specific location El Gallo had visited on November 20, 2012. *Id.* at ¶ 49. The agents saw El Gallo drive up to and stop his car in front of the fourth house from the intersection of Westmoreland and Dumbarton Avenues, on the west side of the street. *Id.* at Attachment A; *id.* at ¶ 50. The agents witnessed a man walk out from the alleyway at the side of the house, approach El Gallo's vehicle, and speak to him through the driver's side window for a few minutes. *Id.* at ¶ 51.

The HSI agents continued to surveil the premises and observed a number of individuals and cars coming and going. *Id.* at ¶¶ 52-56. One of the vehicles the agents observed was a Chevrolet Trailblazer registered to the name Maria Allantata, with a listed address of 2838 Westmoreland Avenue, Redwood City, California. *Id.* at ¶ 59. The agents conducted a commercial database check on the house they were surveilling and learned that one of the individuals associated with 2838 Westmoreland Avenue was listed as a Maria Rosario Alcantara Sotelo. *Id.* at ¶ 63. The agents further learned that 2838 Westmoreland was one of three residences co-located within the house they were surveilling, the other two residences being numbered 2840 and 2842. *Id.* at ¶ 50. The agents also reviewed El Gallo's phone

---

financial systems and enforces America's customs and immigration laws at and beyond our nation's borders." See http://www.ice.gov/about/offices/homeland-security-investigations.

2

records, and found that, between March 1, 2012 and October 22, 2012, El Gallo's phone had called a number subscribed to by a Maria Alcantara 645 times. *Id.* at ¶ 64. The agents conducted research into the Maria Alcantara identity through Homeland Security, the Department of Motor Vehicles, and State Department passport records, but could find no records associated with that identity. *Id.* at ¶ 65.

In December, 2012, HSI agents conducted further investigation into the residences at 2838/2840/2842 Westmoreland Avenue. Declaration of James Burke in Support of the United States' Opposition to Defendant's Motion to Dismiss [sic] ("Burke Decl.") at 3. The only building permit on record for the property was a roof replacement from 1999, which included a sketch that showed three units in the building. *Id.* Parcel records for the property referred to it as a "triplex." *Id.* Additional on-site surveillance revealed that the property had three mailboxes, and three PG&E gas and electricity meters. *Id.*

On February 5, 2013, on the basis of this investigation, HSI sought and obtained a search warrant for 2838 Westmoreland Avenue. Def.'s Mot. Ex. A at ¶ 69. Later that evening, an HSI agent walked down the alleyway on the left side of the property to identify any obstacles to executing the warrant. Burke Decl. at 4. The agent observed that the property had a single door at the front, bearing the address 2842. *Id.* Down the alleyway, there were three more doors. *Id.* As he proceeded down the alleyway, the agent noticed that the first two doors on the alleyway had exterior door lights and each had several pairs of shoes out front. *Id.* The fourth door had no lights on and no shoes out front. *Id.*

After realizing that there was a fourth door, the agent analyzed a Google Earth image of the property to see whether there were any air or plumbing vents on the property near the fourth door. *Id.* He was unable to see any. *Id.* The agent determined that, although the doors in the alleyway were unmarked, because 2842 was the first unit at the front of the building, the units were likely numbered in descending sequential order, making 2838 – the subject residence – the second door in the alleyway. *Id.* Further, based on commercial database checks indicating that there was no 2836 or 2838A located on the property, the agent concluded that there were only three residences on the property. *Id.* at 3.

On February 7, 2013, HSI agents executed the search warrant for 2838 Westmoreland Avenue. Declaration of Jason Ko in Support of the United States' Opposition to Defendant's Motion to Dismiss [sic] ("Ko Decl.") at 1. The search warrant team proceeded to the second door on the alleyway and

3

1 conducted a knock and announce. *Id.* at 2. A woman, later identified as Maria Alcantara Sotelo, 2 answered the door and confirmed that the residence was 2838 Westmoreland Avenue. *Id.* The agents 3 entered the residence and located, in plain view, hundreds of items related to the production of 4 fraudulent identity documents. *Id.*

While the agents were searching, one agent remained outside, guarding the last door on the alleyway. *Id.* A woman opened that door from the inside and asked, primarily in Spanish, what was happening. *Id.* The agent on guard tried to tell her, in broken Spanish, that they were conducting a search and she should remain inside.[2] *Id.*

The defendant now moves to suppress the fruits of the February 7, 2013 search of 2838 Westmoreland Avenue on two grounds: (1) the search warrant lacked particularity because it failed to inform the magistrate judge that 2838 Westmoreland Avenue actually described two separate residences and failed to specify which of the two residences was the premises to be searched; and (2) during the execution of the search warrant, the agents wrongly entered both 2838 Westmoreland Avenue apartments and searched both without legal authority.

**LEGAL STANDARD**

Under the Fourth Amendment, a search warrant may not issue without probable cause. U.S. Const. amend. IV. Probable cause exists where the issuing judge can determine that there is a "fair probability" that the evidence sought will be found in the place searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983) ("The task of the issuing magistrate is simply to make a practical, common-sense

---

[2]There is a dispute regarding the amount of contact the agents had with the individuals discovered in the fourth residence. According to HSI reports, those residents "were also contacted by agents. It was quickly determined this family was not involved with the production of counterfeit documents, and their premises were not searched." Declaration of Janaki Gandhi in support of the United States' Opposition to Defendant's Motion to Suppress ("Gandhi Decl.") Ex. 5. The agent who remained on guard outside the fourth door recalls that the search of 2838 Westmoreland lasted for several hours and that, to his knowledge, "none of the agents destroyed property or otherwise violently conducted a search in the fourth residence." Ko Decl. at 2. However, Monica Pantoja, the woman who lives in the fourth residence, states that the police "threw my things, my personal things, a bathrobe, they threw everything and searched everything looking for computers and machines." Def.'s Mot. Ex. M. She claims that they were inside her home for an hour and used her bathroom repeatedly. *Id.* HSI agents certainly entered the fourth residence; indeed, they documented the entry on video. Def.'s Mot. Ex. N. The video pans the fourth residence, showing a very small, neatly organized home, bearing no evidence that it was searched. *Id.*

4

decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."). In determining whether a search warrant was based upon probable cause, the district court is "limited to the information and circumstances contained within the four corners of the underlying affidavit." *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985), *amended on other grounds*, 769 F.2d 1410 (9th Cir. 1985).

Moreover, "the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be search and the persons or things to be seized.'" *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (quoting U.S. Const. amend. IV). Whether a warrant is insufficiently particular is judged on the basis of those facts which the officers knew or should have known at the time the warrant was issued. *Id.* at 85. Accordingly, "the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant." *Id.* Instead, the particularity requirement is satisfied if "the warrant describes the place to be searched with sufficient particularity to enable law enforcement officers to locate and identify the premises with reasonable effort, [and no] reasonable probability exists that the officers may mistakenly search another premise." *United States v. Mann*, 389 F.3d 869, 876 (9th Cir. 2004) (citation and internal quotation marks omitted). Thus, a search warrant is not automatically invalid simply because it contains technical mistakes in the address or physical description of the place to be searched. *See, e.g.*, *Garrison*, 480 U.S. at 79; *United States v. Turner*, 770 F.2d 1508, 1510-11 (9th Cir. 1985); *but see United States v. Collins*, 830 F.2d 145, 146 (9th Cir. 1987) (holding that suppression was the appropriate remedy where, due to the officers' careless and reckless behavior in seeking the warrant, which resulted in insufficient particularity, the officers mistakenly searched the wrong house).

Review of a magistrate judge's determination that a warrant was supported by probable cause is deferential; "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238-39; *see also United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) ("Normally, we do not 'flyspeck' the affidavit supporting a search warrant through de novo review; rather, the magistrate judge's determination should be paid great deference." (internal quotation marks omitted)).

5

When executing a search warrant, police officers do not enjoy unfettered authority to search the premises described. *Mena v. City of Simi Valley*, 226 F.3d 1031, 1038 (9th Cir. 2000). "If, during the search, the officers become aware that the warrant describes multiple residences, the officers must confine their search to the residence of the suspect." *Id.* (quoting *United State v. Kyles*, 40 F.3d 519, 524 (2d Cir. 1994)). In such circumstances, as soon as the officers realize that a unit may be "erroneously included within the terms of the warrant," they are required to immediately cease searching that unit. *Garrison*, 480 U.S. at 87. Thus, while the permissible extent of a search is strictly limited, courts have "also recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Id.*

**DISCUSSION**

The defendant argues that his Fourth Amendment rights were violated: (1) because the search warrant lacked particularity; and (2) because the police conducted an unwarranted search of the unexpected fourth residence. He contends that these violations require the suppression of all evidence seized during the search. For the reasons set forth below, the Court rejects both arguments.

**1.     The Search Warrant Was Sufficiently Particular.**

The Fourth Amendment's particularity requirement is satisfied if a warrant describes the place to be searched with sufficient particularity that the officers executing the warrant can reasonably find and identify the premises, and there is no reasonable probability that they will mistakenly search another location. *Mann*, 389 F.3d at 876. "The practical accuracy rather than the technical precision governs in determining whether a search warrant adequately describes the premises to be searched." *Id.* (quoting *United States v. Williams*, 687 F.2d 290, 292 (9th Cir. 1982)). Officers' conduct in seeking a warrant is judged "on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate." *Garrison*, 480 U.S. at 85. Thus, if an otherwise valid search warrant is later found overbroad in scope due to a reasonable mistake as to the layout of the place to be searched, the warrant is not retroactively invalidated. *Id.*

6

1    The defendant argues that the search warrant here was insufficiently particular because, although
2 the agents were on notice that the property was a multi-unit dwelling, they failed to undertake adequate
3 investigations into precisely how many units there were, and who lived in each unit.[3]  *See* Def.'s Mot.
4 at 9-18.  The record does not support the defendant's contentions.

5    The warrant affidavit challenged here contains a lengthy section on probable cause.  Def.'s Mot.
6 Ex. A.  Indeed, the affiant included a ten-page probable cause section, detailing the investigation HSI
7 agents performed that led them to believe that evidence of a fraudulent identity document organization
8 would be found at 2838 Westmoreland Avenue.  *Id.*  The warrant application explains in detail how HSI
9 agents investigated the alleged fraudulent document organization, and were eventually led to the
10 Westmoreland Avenue address.  *Id.* at ¶¶ 23-46.  On at least four occasions before seeking the warrant,
11 HSI agents conducted surveillance of the Westmoreland Avenue property.  *Id.* at ¶¶ 46-57.  The agents
12 conducted commercial database checks of the property and learned that 2838, 2840, and 2842
13 Westmoreland Avenue were co-located on the premises.  *Id.* at ¶ 63.  They further learned that one of
14 the names associated with 2838 Westmoreland Avenue – Maria Rosario Alcantara Sotelo – was similar
15 to the name of the registered owner of one of the vehicles they had been tailing – Maria Allantata, also
16 listed as a resident of 2838 Westmoreland Avenue – as well as the subscriber of a telephone number
17 –Maria Alcantara – whose number had been called by one of the subjects of the investigation 645 times
18 in an eight-month period.  *Id.* at ¶¶ 59, 63, 64.  Based on this investigation, the HSI agents were able
19 to determine that 2838 Westmoreland Avenue was "located towards the rear of the building and [was]
20 accessed via an alleyway on the left side of the building," and was the particular location for which there
21 was probable cause to search.  *See id.* ¶ 50.

---

[3]The defendant further argues that the existence of a technical error in the warrant application should invalidate the search warrant.  *See* Def.'s Mot. at 10-11.  Specifically, the description of the property to be searched states that "[t]he building has two units in the front of the building (2840 and 2842 Westmoreland)."  *Id.* at Ex. A, Attachment A.  In truth, unit 2840 was the first door on the alleyway, and therefore not at the front of the building.  *Id.* at Ex. E.  However, this sort of technical error does not invalidate a search warrant.  *Mann*, 389 F.3d at 876.  Units 2842 and 2840 were both clearly marked.  Def.'s Mot. Exs. D, E.  Thus, even though the description of the premises was technically deficient, the practical accuracy of the description was sufficient that an officer executing the search warrant would not mistakenly search the wrong unit on the basis of the technical misdescription.

7

Furthermore, in December, 2012, two months before seeking the search warrant, an HSI agent visited the San Mateo County Building Permit and Inspection Department to further investigate the property. Burke Decl. at 3. The only permit on record was from a roof replacement in 1999. *Id.* The file contained a sketch of the property, showing three units in the building. *Id.* Parcel records for the property described it as a "triplex." *Id.* Additionally, the agents learned that the property had only three mailboxes, and was serviced by only three PG&E gas and electricity meters. *Id.* Although this information was not included in the warrant application, this further investigation formed the basis of the agents' knowledge and description of the premises to be searched. Thus, based on the knowledge the agents had, at the time they sought the warrant, there was sufficient particularity for the warrant to properly issue. *See Garrison*, 480 U.S. at 85-86.

The defendant nevertheless contends that the agents were on notice of the possibility that the property contained a fourth residence, and that their failure to inform the magistrate of this possibility renders the warrant invalid. In support of this argument, the defendant points to two main facts: (1) a database search that turned up the name Monica Pantoja in connection with 2838 Westmoreland Avenue; and (2) an investigation of the property that an HSI agent performed later on the day the warrant was issued that revealed the existence of a fourth door at the property. Neither of these facts is sufficient to invalidate the warrant.

First, there is no reason why the existence of an additional name associated with the subject address should have put the agents on notice that there were actually two separate residences bearing the same street address. Indeed, the warrant application notes the confusion regarding the Maria Alcantara identities and concludes that it may be a fictitious name as is common in the counterfeit document business. Def.'s Mot. Ex. A at ¶ 65. Accordingly, the name Monica Pantoja could well have been another fictitious name associated with the same address. Even if Monica Pantoja turned out to be a separate person, the mere fact that more than one individual was listed as occupying the address was not enough to put the agents on notice that there may have been more than one unit bearing the address 2838 Westmoreland Avenue.

Second, the additional investigation the HSI agent performed between the time the warrant was issued and when it was executed did not render the warrant invalid. On February 5, 2013, the same day

8

the warrant was issued, an HSI agent walked down the alleyway on the left side of the Westmoreland Avenue property to ascertain whether there were any obstacles to the effective execution of the search warrant. Burke Decl. at 4. The agent noticed that there were three doors in the alley. *Id.* Two of the doors were located "close to one another" at the back half of the building. *Id.* Neither door was marked with an address. *Id.* The first unmarked door had an exterior light and several pairs of shoes beside it. *Id.* The agent noted that it appeared to be inhabited. *Id.* By contrast, the second unmarked door had no shoes outside of it and no lights were on. *Id.*

After the agent realized that the property had a fourth door, he took further steps to ensure that the property indeed comprised only three residences. *Id.* The agent conducted a Google Earth search of the property to see whether there were any air or plumbing vents associated with the fourth door. *Id.* He found none. *Id.* The agent was aware that it is not uncommon for multi-unit buildings to contain storage rooms or utility areas, and concluded that something of this character was the likely use of whatever was behind the fourth door. *Id.* The Court "must judge the constitutionality of [the agents'] conduct in light of the information available to them at the time they acted." *Garrison*, 480 U.S. at 85. Based on all of the facts known to the agents at that time, the Court concludes that they reasonably believed the Westmoreland Avenue property contained only three residences.

Accordingly, the Court finds that the warrant contained sufficient particularity to satisfy the Fourth Amendment's requirements, based on the reasonable investigation undertaken by the HSI agents prior to seeking and executing the search warrant.

**2.     The Execution of the Search Warrant Did Not Violate the Defendant's Constitutional Rights.**

The defendant next argues that the manner in which the search was conducted was unlawful and requires suppression of the evidence seized. Def.'s Mot. at 18-23. Specifically, the defendant contends that HSI agents searched both his apartment, and that of his next door neighbor, Monica Pantoja. *Id.* In support of his argument, the defendant proffers a declaration by Monica Pantoja, and a video taken by an HSI agent showing the inside of her apartment. *Id.* at Exs. M, N. Ms. Pantoja's declaration states that the agents "very violently went inside [her] house without any permission. They threw [her] things,

9

[her] personal things, a bathrobe, they threw everything and searched everything looking for computers and machines." *Id.* at Ex. M. She further claims that the agents took photos of her mail and asked her personal questions. *Id.*

By contrast, the agent who stood guard outside Ms. Pantoja's door stated that, to his knowledge, none of the agents "violently conducted a search of" her residence. Ko Decl. at 2. The HSI details of investigation states that, while Ms. Pantoja was contacted by the agents, "[i]t was quickly determined this family was not involved in the production of counterfeit documents, and their premises were not searched." Gandhi Decl. Ex. 5. The video taken by the HSI agent shows a very small, well-organized apartment. Def.'s Mot. at Ex. N. The only thing that appears disarranged at all is the bedding on the one bed in the residence. *Id.*

There is therefore a dispute of fact regarding the extent to which the HSI agents may have searched Ms. Pantoja's residence. Where necessary, the Court may resolve disputes of fact in ruling on a motion. Fed. R. Crim. P. 12(d). However, the Court need not resolve the dispute of fact in this case because the result has no bearing on the outcome of the defendant's motion.

Even if the HSI agents did search Ms. Pantoja's residence, suppression would not be the appropriate remedy. *See United States v. Payner*, 447 U.S. 727, 733-34 (1980) (stating that even "unconstitutional and possibly criminal behavior" does not necessarily "command the exclusion of evidence in every case of illegality"). Instead, a "defendant's Fourth Amendment rights are violated only when the challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party." *Id.* at 731 (emphasis in original).

The defendant does not assert that he had a legitimate expectation of privacy in Ms. Pantoja's residence. Indeed, his declaration is expressly to the contrary. Def.'s Mot. Ex. I, at 2 ("Monica is my neighbor. We live in separate apartments. I do not have the key or any right to enter her apartment nor she into mine."). The defendant's Fourth Amendment rights therefore cannot have been violated by any search the agents may have performed in Ms. Pantoja's residence.

Finally, even if the agents erroneously searched Ms. Pantoja's residence and that search had violated the defendant's Fourth Amendment rights, suppression would still not be the appropriate remedy here. The defendant asserts that his apartment is "an extremely small one-room apartment . .

10

. ." Def.'s Mot. Ex. I, at 1. When the HSI agents entered the defendant's apartment, they immediately saw "hundreds of items representing the existence of a fraudulent identity document business" in plain view. Ko Decl. at 2. The defendant further states that the agents were already in his apartment when he heard them knock on Ms. Pantoja's door. Def.'s Mot. Ex. I, at 2. Thus, before the agents could possibly have entered Ms. Pantoja's residence, they had already seen the challenged evidence sitting in plain view in the defendant's apartment. Accordingly, the agents, while executing a valid warrant, had already discovered the evidence the defendant seeks to suppress before any possible improper search of Ms. Pantoja's apartment could have taken place.[4] The purposes of the exclusionary rule would not be served in these circumstances by suppressing evidence discovered prior to any possible wrongdoing. *See, e.g.*, *United States v. Ritter*, 416 F.2d 256, 267 (3d Cir. 2005) (agreeing that evidence discovered before officers realized the premises they were searching comprised multiple units should not be suppressed).

At oral argument, the defendant contended that the issue of standing was irrelevant here because the warrant's deficiencies made a search of any residences at the Westmoreland Avenue property unconstitutional. However, as discussed above, this warrant was based on sufficient probable cause, and contained adequate particularity, and thus the defendant's argument fails at its inception.

Accordingly, because the Court finds that the HSI agents' execution of the warrant did not violate the defendant's Fourth Amendment rights, the evidence should not be suppressed on this basis.

///

---

[4] At oral argument government counsel confirmed that the video of Ms. Pantoja's residence, showing no evidence of a search, was taken within the first hour or so of the search of the defendant's residence. The defendant did not dispute this characterization and indeed, argued that the search Ms. Pantoja described may have taken place after the video was filmed. Based on these further facts, the HSI agents certainly observed the challenged evidence before any possible search of Ms. Pantoja's residence could have taken place.

11

**CONCLUSION**

For the foregoing reasons and for good cause shown, and on the basis of the record before it, the Court hereby DENIES the defendant's motion to suppress evidence.

**IT IS SO ORDERED.**

Dated: November 12, 2013

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE